15610

STATE v. TAKIS

(28 S. E. (2d), 679)

November, 1942.

*Messrs. Price & Poag,* of Greenville, S. C., Counsel for Appellant,

*Mr. W. A. Bull, Solicitor,* Greenville, S. C., for The State,

January 14, 1944.

MR. ASSOCIATE JUSTICE BAKER delivered the Majority Opinion of the Court, with Circuit Judge Thos. S. Sease, Acting Associate Justice, filing a Dissenting Opinion concurred in by MR. ASSOCIATE JUSTICE FISHBURNE.

The Opinion of the Court follows:

I regret that I cannot find myself in accord with the opinion of Mr. Acting Associate Justice Sease in which the conviction of the appellant is affirmed.

The opinion quotes a portion of the governing law when the prosecution relies wholly upon circumstantial evidence to establish the guilt of the accused, as laid down in *State v. Kimbrell,* 191 S. C., 238, 4 S. E. (2d), 121, 122, but the paragraph following the quoted paragraph from said case is just as applicable and potent, and reads as follows: "Every circumstance which is relied upon by respondent as material must be brought to the test of strict proof. All of the facts proved must be consistent with each other, and, taken together, should be of a conclusive nature and tendency, producing a reasonable and moral certainty that the appellant and no one else committed the offense charged. It is not sufficient that they create a probability, though a strong one; and if, therefore, assuming all the facts to be true, which the evidence tends to establish,

they may yet be accounted for upon any hypothesis which does not include the guilt of appellant, then the proof fails. The reason for this is that all presumptions of law, independent of evidence, are in favor of innocence, and every person is presumed to be innocent until he is proved to be guilty. As has often been stated, it is not sufficient to establish a probability of guilt arising from the doctrine of chances that the fact charged is likely to be true."

It is quite true that ordinarily the State, upon the trial of an accused for a homicide, does not have to show motive, but where, as in this case, the State undertook to prove motive as a part of its chain of circumstantial evidence against the accused, and without which there would have been no "corroboration of the primary fact of guilt," then motive became most material, and the law as stated in the paragraph quoted above from the *Kimbrell case* is apposite.

I have studied the record in this case and agree with the statement in the opinion of Mr. Justice Sease, "that measured by the circumstantial evidence rule, this testimony is insufficient to prove adultery" on the part of the deceased. In fact, in my opinion it was unfair to the memory of the deceased that the State injected in the case such flimsy circumstances in a desperate attempt to show motive on the part of the appellant. And such testimony was unfair to the appellant.

While the argument of the prosecuting attorney to the jury, not having been taken stenographically, is of course, not in the record, the order of the trial Judge refusing a new trial shows that the alleged adulterous conduct on the part of the wife (the deceased) of the appellant, and an alleged Greek custom in such case, was strenuously argued to it as the motive for the homicide, and was therefore strongly relied upon by the State, as a circumstance to prove the guilt of the appellant. What effect this testimony had upon the

verdict of the jury is known only to the members thereof; but in the light of the other circumstantial evidence in the case, I can reach no other conclusion than that it swayed the jury into rendering the verdict which it did.

Without passing upon the sufficiency of the other testimony in the case to justify the trial Judge in submitting the question of the innocence or guilt of the appellant to the jury, motion for a directed verdict of not guilty not having been made, I cannot help but reach the conclusion that the appellant, even if it was unnecessary for the State to show motive on his part, was so prejudiced by the testimony which attempted to relate to the alleged adultery of the deceased (and the argument of the Solicitor thereabout), and this material (or immaterial) link in the chain of circumstances relied upon by the State to establish the appellant's guilt, that justice demands that the appellant be granted a new trial.

I of course concur in that portion of the opinion of Mr. Justice Sease in which it is held that it was not necessary for the trial Judge to charge the law of manslaughter.

Mr. Associate Justice Stukes and Circuit Judge E. H. Henderson, Acting Associate Justice, concur.

Circuit Judge T. S. Sease, Acting Associate Justice (dissenting):

The defendant, Alek Takis, was tried in the Court of General Sessions for Greenville County, at the November, 1942, term, upon an indictment charging him with the murder of his wife, Esther Takis. The undisputed testimony shows that deceased was brutally murdered in the early morning hours of August 7, 1941, in her bed room in the home of defendant. The jury returned a verdict of guilty with recommendation to mercy. A motion for a new trial was made and argued before the trial Court. Whereupon,

the motion was overruled and the trial Judge sentenced defendant to life imprisonment.

Upon the trial, before the Honorable A. L. Gaston, presiding Judge, and a jury, no one testified to having witnessed the event which caused the death of Esther Takis. For the purpose of establishing its case, the State relied upon circumstantial evidence adduced by various witnesses and exhibits. In addition to his general plea of not guilty, the defendant maintained that he had nothing to do with the event that caused the death of his wife and maintained that some one had entered his home and murdered his wife.

The State offered testimony tending to show the following facts and circumstances, many of which are denied or traversed by defendant's testimony: The deceased was brutally attacked in her bed room in home of defendant; the killer grasped his victim by the throat with his left hand and dealt a death blow on the forehead with an axe held in his right hand; defendant and his wife were sleeping alone in the home in separate rooms thirty feet apart; defendant, about 2:45 A. M., August 7, 1941, alarmed Mrs. Hunt and her husband, his neighbors across the street from his home, and asked them to come quick, his wife's face was covered with blood; Mrs. Hunt hurriedly dressed and ran over at once and was shortly followed by her husband, they found Mrs. Takis on her bed, she was very bloody and blood was gushing out of a wound on her forehead; upon arrival of Mrs. Hunt, defendant picked up an axe which was partially under the bed; Mrs. Takis apparently recognized Mrs. Hunt and said: "I called you twice and you wouldn't come;" before going to Mrs. Hunt's to give the alarm, defendant took time to put on his pants and shoes; a telephone was in the home and police and doctor were not called until after Hunts arrived at the scene; defendant, upon arrival of Mr. Hightower, a policeman, told him he was awakened by coughing at a house next door and then heard groaning in his wife's room, he then got up and went to his wife's room

and found her behind the chifforobe which had been pulled out slightly from a corner in which it sat; the bed on which Mrs. Takis was found was saturated with blood and she was bleeding freely from the axe wound in forehead, but no blood was found on the back of chifforobe or on floor back of chifforobe; Mr. Hightower, upon his arrival, asked what had happened, and defendant replied that some one had come in and beaten up his wife; later upon being questioned further, defendant admitted the house was thoroughly locked from the inside at the time he found his wife, with exception of a half-raised window and screen in living room, and he did not believe any one had broken in the house, telling the officers that when he went for Hunts, he unlatched from inside front screen door in living room, and so testified to this at the trial; the half-raised window and screen in living room had on the outside, about the middle, a flower pot with flower therein extending well above the bottom of window sill, and on the inside, extending nearly the length thereof, was a small table with a centerpiece and picture thereon, none of these had been disturbed in the least; defendant told officers that he could have taken enough whiskey to make him drunk enough that he could have gone in there and committed the crime and not remember it; quarreling was heard between a man and woman at home of defendant between nine and ten o'clock on night of killing; and heard the words "I do as I please" and the same voice that was in the fussing; Mrs. Takis riding to and from defendant's place of business with one Turner. The only blood on hands of defendant was underneath the nail of his right thumb, he having taken hold of his bloody wife and helped her from behind chifforobe to bed; during a reenactment by Officer Ballard of the fatal event from the obvious wrong side of the bed, defendant jumped up and said, "No, no, no" and ran around to the other side, which was the obvious side from which deceased was attacked.

The defendant has appealed to this Court upon seven exceptions. As presented by the defendant's oral and written argument, and . as we view them, the seven exceptions squarely present three questions: Was adultery on the part of the deceased, a material and essential part of the State's case? Was the circumstantial evidence adduced by the State sufficient to submit to the jury upon which to rest a conviction? Should the issue of manslaughter have been submitted to the jury?

The State offered testimony tending to prove that frequently the deceased rode to and from the cafe of her husband with one Turner. The sole purpose and the only theory on which this testimony was admissible was to show unfaithfulness on the part of the wife and, as such, a motive on the part of defendant for killing his wife. Counsel for defendant very ably and forcefully take the position that in view of this testimony and the argument of Solicitor Ashmore to the jury along this line, proof of adultery on the part of deceased was a material and essential element in the State's case and that the testimony along this line is insufficient to meet the test as required by the circumstantial evidence rule. While we are inclined to agree that measured by the circumstantial evidence rule, this testimony is insufficient to prove adultery, we cannot agree with counsel of defendant that the chastity of the deceased was a material issue and was an essential part of the State's case. It is clear from our cases that the State, on a trial for homicide, need not prove a motive for the commission of the crime. *State v. Underwood,* 127 S. C., 1, 120 S. E., 719. Motive is an auxiliary fact, from which, when established in connection with other facts, the main or primary fact of guilt may be inferred. Proof of motive furnishes corroboration of the primary fact of guilt. Equally true, a lack of motive may be corroboration of the innocence of the accused and ·may be sufficient to raise a reasonable doubt in the minds' of the

jury. The trial Judge so charged the jury in this case at the request of the defendant.

Counsel for defendant, in their motion for a new trial, in their exceptions, and in their argument before us, lay great stress on the contention that Solicitor Ashmore, in his argument before the jury, relied upon adultery of deceased as a necessary link in the chain of circumstantial evidence against defendant. The transcript of record does not contain the arguments of the lawyers. Therefore, we have no way of knowing just what the contentions and theories of the lawyers were before the jury. As we view the matter, granting that the Solicitor made the argument as contended by counsel for defendant, this is of no help to the defendant. It cannot be successfully questioned that jurors do not in every case adopt the theories of lawyers; they may, and do in many instances, reach and adopt their own theories and conclusions. We think the able trial Judge correctly answered this contention on the part of defendant, in his remarks overruling motion for a new trial as follows: "I know that was the issue raised in the case, but if the defendant killed his wife and the jury believed it, they could not stultify themselves by turning him loose, and that was the issue in the case, whether he killed his wife or not, and there certainly was enough evidence to go to the jury on that issue as to whether he killed his wife."

As we have already pointed out, the evidence relied upon by the State was wholly circumstantial. In the recent case of *State v. Kimbrell,* 191 S. C., 238, 4 S. E. (2d), 121, 122, this Court laid down the rule of law where circumstantial evidence is relied upon for conviction in the language following: "Where it is undertaken by the prosecution in a criminal case to prove the guilt of the accused by circumstantial evidence, not only must the circumstances be proven, but they must point conclusively—that is, to a moral certainty—to the guilt of the accused; they must be wholly and in every particular perfectly consistent with each other,

and they must further be absolutely inconsistent with any other reasonable hypothesis than the guilt of the accused. *State v. Langford,* 74 S. C., 460, 55 S. E., 120; *State v. Aughtry,* 49 S. C., 285, 26 S. E., 619, 27 S. E., 199; *State v. Hudson,* 66 S. C., 394, 44 S. E., 968, 97 Am. St. Rep., 768."

Using the above statement of the law as a measuring stick, we are of the opinion that had there been a motion for a directed verdict, and we are proceeding as if such a motion had been made in the trial Court, the evidence in this case compelled the trial Judge to submit the issue of the guilt or innocence of defendant to the jury. Then it became the duty of the jury after proper instructions, and the distinguished trial Judge in this case charged the jury substantially in the language of the *Kimbrell case, supra,* to seek for any reasonable explanation of the circumstances. other than the guilt of the defendant. If a jury is able to find such a reasonable explanation, it becomes their duty to acquit. But if they cannot find such a reasonable explanation, and are, in addition, satisfied beyond a reasonable doubt that defendant is guilty, it becomes their duty to so find him. The jury in this case by their verdict have said they did not find any reasonable explanation other than the guilt of defendant and was satisfied beyond a reasonable doubt of his guilt. If the jury is in error, this Court is without power or authority to correct this error of fact. This power rests solely with the trial Court which Court has approved the verdict of the jury.

We are unable to agree that there is any evidence in the record which made it incumbent upon the trial Judge to give any instruction to the jury on the law of manslaughter. The testimony given by defendant himself is positive and specific to the point that on the night of the homicide, his wife, the deceased, had offered him no violence or provocation whatsoever. The defendant emphatically maintained that his wife had been a good and faithful wife. Our examination of the record does not disclose any theory

upon which the law of manslaughter could properly have been charged. We have held in a very recent case of *State v. Bealin*, 201 S. C., 490, 23 S. E. (2d), 746, 760, as follows:

"Where a careful examination of the testimony fails to suggest any theory upon which a verdict of manslaughter could rest, a new trial should not be granted for failure to charge upon a phase of the law to which the testimony could not in any reasonable view be made to apply. *State v. Adams*, 68 S. E., 421, 47 S. E., 676.

"Upholding the same doctrine are the cases of *State v. Weldon*, 89 S. C., 308, 71 S. E., 828; *State v. DuRant*, 87 S. C., 532, 70 S. E., 306; *State v. Jones*, 133 S. C., 167, 130 S. E., 747."

In the recent case of *State v. Edwards*, 194 S. C., 410, 10 S. E. (2d), 587, at page 589, Mr. Justice Baker speaking for this Court said: "Where a deadly weapon is used, and a person is killed, and there is no evidence whatsoever tending to reduce the crime from murder to manslaughter, then it is not only unnecessary for the trial Judge to charge the jury the law as to manslaughter, but it is improper to do so." In this connection it may not be amiss to make this observation. If the trial Judge had charged the law as to manslaughter, could not it have been logically argued that this was equivalent to telling the jury that he believed that there was some evidence that defendant killed his wife? And if defendant had requested a charge as to manslaughter, could not it have been logically argued that he admitted that he killed his wife?

Attorneys for the defendant did not request the Court to instruct the jury as to the law of manslaughter. On the other hand, they, with commendable frankness, state in their written argument that they in open Court stated that there was no middle ground in this case. See the cases of *State v. White*, 21 S. C., 597; *State v. Adams*, 68 S. C., 421, 47 S. E., 676, sustaining the proposition that in absence of a request, or failure to call attention to failure to instruct as

to manslaughter, it is not reversible error to fail to charge as to the law of manslaughter.

In our opinion, defendant had a fair and impartial trial.

All exceptions should be overruled and the judgment and sentence appealed from should be affirmed.

MR. ASSOCIATE JUSTICE FISHBURNE concurs.

MESSRS. ASSOCIATE JUSTICES BAKER and STUKES and CIRCUIT JUDGE E. H. HENDERSON, ACTING ASSOCIATE JUSTICE, concur in part and dissent in part.