518 S.E.2d 269

The STATE, Respondent,

v.

William P. ROBINSON, Appellant.

No. 2988.

Court of Appeals of South Carolina.

Heard Feb. 9, 1999.

Decided May 3, 1999.

Assistant Appellate Defender M. Anne Pearce, of S.C. Office of Appellate Defense, for appellant.

Attorney General Charles M. Condon, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Salley W. Elliott and Senior Assistant Attorney General Norman Mark Rapoport, of Office of the Attorney General; and Solicitor Warren B. Giese, all of Columbia, for respondent.

CONNOR, Judge:

A jury convicted William P. Robinson of second degree computer crime. The trial judge sentenced him to three years imprisonment and payment of a $50,000 fine, suspended on service of thirty months and $10,000. Robinson appeals. We affirm.

## I. SPEEDY TRIAL

### A. Factual Background

Robinson was arrested in April 1991 and indicted for first degree computer crime in September 1991. In December 1995, the Chief Administrative Judge for Richland County held the last of several status conferences in the case and verbally ordered the State to try Robinson by January 1996 or he would dismiss the case.

The State called the case for trial on January 30, 1996. Robinson made a pre-trial motion to dismiss based on the State's violation of his right to a speedy trial and due process rights. Defense counsel conceded Robinson never made a formal motion for a speedy trial, but argued he sent letters as early as September 1994 to the solicitor and the Chief Administrative Judge indicating Robinson's willingness to proceed to trial. Robinson first filed a motion to dismiss for failure to prosecute on May 10, 1995. This eventually lead to the January trial date.

In response to the pre-trial motion to dismiss, the State contended gathering evidence of the conspiracy and locating co-conspirators took substantial time. Specifically, the State maintained the case involved a complicated criminal conspiracy which required a thorough investigation. Furthermore, the State argued it had difficulty locating one co-defendant whose testimony was essential, and had been negotiating with another co-defendant who had finally cooperated and was available to testify. The trial judge denied Robinson's motion to dismiss.

At the conclusion of the pre-trial evidentiary matters, Robinson noted the indictment was defective because the solicitor had been the only witness to appear before the grand jury. On defense counsel's motion, the trial judge quashed the indictment.

On February 20, 1996, the trial judge held a hearing on Robinson's motion to dismiss because the State had failed to prosecute the case by January 1996 as mandated by the Chief Administrative Judge's verbal order. Although the State initially complied with the order by calling the case on January 30, Robinson argued the State violated the order when the case was continued because of the defective indictment. The State contended the error in the indictment was a mere oversight, not an intent to delay the trial. The trial judge denied Robinson's motion to dismiss finding the Chief Administrative Judge never signed a written order, the State complied with the order by calling the case in January, the judge quashed the indictment on defense counsel's own motion, and Robinson was not prejudiced by the delay.

Robinson was re-indicted on February 28, 1996, and tried on March 4, 1996. Robinson renewed his motion to dismiss which was denied by the trial judge.

## B. Discussion

Robinson maintains the trial judge erred in denying his motion to dismiss because the five-year delay between his arrest and trial resulted in a violation of his due process rights and his right to a speedy trial. Alternatively, Robinson argues the case should have been dismissed because it was not tried by January 1996 as mandated by the Chief Administrative Judge's verbal order.

 The Sixth Amendment of the United States Constitution, as applied to the states through the Fourteenth Amendment, guarantees an accused the right to a speedy trial. *See State v. Chapman,* 289 S.C. 42, 344 S.E.2d 611 (1986); *Wheeler v. State,* 247 S.C. 393, 147 S.E.2d 627 (1966). This right is also provided by Article 1, Section 14, of the South Carolina Constitution. *See State v. Brazell,* 325 S.C. 65, 480 S.E.2d 64 (1997); *Chapman,* 289 S.C. at 44, 344 S.E.2d at 612. The determination of whether or not an accused has been denied his constitutional right to a speedy trial depends on the circumstances of each case. *Brazell,* 325 S.C. at 75, 480 S.E.2d at 70. In *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), the United States Supreme Court adopted a four part balancing test to determine when a defendant has been denied the right to a speedy trial. The factors of the test include: 1) the length of the delay; 2) the reason the State asserts to justify the delay; 3) when and how the defendant asserted his right to a speedy trial; and 4) the prejudice to the defendant. *Id.* at 530, 92 S.Ct. 2182. South Carolina has also adopted this approach to the speedy trial analysis. *See Brazell,* 325 S.C. at 75, 480 S.E.2d at 70; *State v. Smith,* 307 S.C. 376, 415 S.E.2d 409 (Ct.App.1992).

 In this case, the five-year delay is troubling. Although delay alone is not dispositive in the speedy trial analysis, this substantial delay by the State in prosecuting the case is sufficient to trigger review of the remaining three factors. *See Brazell,* 325 S.C. at 75–76, 480 S.E.2d at 70 (a three-year and five-month delay was sufficient to trigger review); *State v.*

*Waites*, 270 S.C. 104, 240 S.E.2d 651 (1978) (two-year and four-month delay in prosecution was sufficient to trigger speedy trial analysis); *Smith*, 307 S.C. at 380, 415 S.E.2d at 411 (three-year delay sufficient to trigger speedy trial review).

Robinson claims the State caused the delay by not calling the case earlier. However, the burden is on Robinson to show the delay resulted from the neglect and wilfulness of the State. *See State v. Dukes*, 256 S.C. 218, 182 S.E.2d 286 (1971). Robinson did not satisfy this burden. There is no evidence the delay was wilful or intentional.

Furthermore, Robinson maintains he first asserted his right to a speedy trial in 1994 by writing letters to the solicitor and Chief Administrative Judge indicating he was ready for trial.[1] However, we conclude Robinson first asserted his right to a speedy trial in May 1995 when he filed the formal motion to dismiss. Robinson's trial began only ten months after his first motion was filed. "[F]ailure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial." *Barker*, 407 U.S. at 532, 92 S.Ct. 2182.

Additionally, there is no evidence actual prejudice resulted from the delay. Robinson states he "suffered actual prejudice in the loss of witnesses and documents that would have been available had the case been tried in a timely manner." However, this general assertion of prejudice alone is insufficient to establish actual prejudice. Robinson cites no specific witness or document that was unavailable because of the delay. Furthermore, lost witnesses and documents are also disadvantages that hamper the State. *See also Chapman*, 289 S.C. at 45, 344 S.E.2d at 613 (no prejudice found where the inability to locate witnesses also hampered the State); *Smith*, 307 S.C. at 381, 415 S.E.2d at 412 (no prejudice found where faded memories of witnesses also hampered the State).

Although the five-year delay in this case was substantial, upon our review and balancing of the *Barker* factors, we find Robinson was not denied his constitutional right to a speedy trial. The case was tried within one year of Robinson's first formal motion to dismiss. The State also presented adequate

---

1. The letters are not included in the record on appeal.

justification for the delay. Finally, Robinson presented no evidence of actual prejudice.

Moreover, we conclude the State complied with the Chief Administrative Judge's order by calling the case on January 30, 1996. Although the case was not tried until March of 1996 because of the defective indictment, it appears the defect was not a result of wilful neglect on the State's part. In fact, it was defense counsel's own motion to quash the indictment that caused the case to be continued to the March term of court. Accordingly, the trial judge did not err in denying Robinson's motion to dismiss for failure to prosecute.

## II. SEARCH WARRANTS

### A. Factual Background

This case involved a complicated forgery/credit card conspiracy between Robinson, Dorue Coleman, Michael Gibbs, and Eric Brooker. The co-conspirators took customer invoices from a local car dealership and gleaned information from the invoices to pull credit reports on various individuals. The co-conspirators were looking for victims with excellent credit histories. They then utilized information from the credit reports, such as addresses and social security numbers, to make false birth certificates, drivers licenses, and W–2 forms. Using these false identifications, the co-conspirators filled out instant credit applications in various victims' names and purchased goods.

The police first learned of the conspiracy when one of the victims, David Brooker, contacted the authorities about the unauthorized use of his credit to obtain merchandise at Circuit City. On March 29, 1991, the police obtained and executed a search warrant for a storage unit rented in the name of "David Brooker." The police then learned that Gibbs had been arrested in Georgia for using "David Brooker's" credit information to buy goods, and that the receipt for the storage unit was found in Gibbs's possession. The authorities tried to interview Gibbs, but he was uncooperative.

The investigation also revealed that a "David Brooker" was registered at the Budgetel hotel across the street from the storage unit. The police obtained a search warrant for the

hotel room which revealed paperwork, credit reports, drivers licenses, false birth certificates, and false credit cards relating to several different victims. Some of the credit reports found during the search originated from C & S Bank where Robinson was employed.

On the night of the search, the police arrested Coleman when he entered the hotel room. Coleman was extremely cooperative and gave the police several different statements over the next few days. Coleman gave his final statement to the police on April 4, 1991, at approximately 4:55 p.m. In his statements, Coleman implicated himself, Robinson, Brooker, and Gibbs. Coleman did not know Robinson's last name, but gave a complete description of Robinson and Robinson's wife, led the police to Robinson's home, knew Robinson was employed at C & S Bank, knew Robinson's wife's name and place of employment, and gave details of meetings at Robinson's home. Coleman stated that Robinson's part in the scheme was to run credit reports on individuals for the other co-conspirators to use in securing false identifications and credit cards.

On April 4, 1991, approximately two hours after Coleman's last statement, the police obtained a search warrant for Robinson's residence. When Officer Bartlett obtained the search warrant, he first verbally explained to the magistrate his reasons for seeking the warrant. The purpose of the April 4 search warrant was to enable the officers to look for items, such as computer equipment, receipts, and credit reports, connecting Robinson to the conspiracy. Bartlett told the magistrate the elements of the case, Coleman's involvement in the conspiracy, Coleman's implication of Robinson in the conspiracy, and the results of the previous search from the Budgetel hotel room. Bartlett also said that he verified Robinson's employment with the Credit Recovery Department of C & S Bank. Bartlett further stated that Coleman's statements had proven to be accurate, and that he had no reason to doubt Coleman's veracity.

After the verbal explanation of probable cause, Bartlett prepared the search warrant affidavit. The search warrant affidavit read as follows:

> the resident and residence has been identified as a co-conspirator in a series of interstate fraud and forgeries.

The resident identified as Bill Robinson has been implicated by a co-defendant. Furthermore, the co-defendant has been in meetings at the residence described herein to plan these frauds and forgeries.

Thereafter, the magistrate swore Bartlett, Bartlett signed the affidavit, and the magistrate issued the search warrant. Bartlett stated he had no reason to believe that the search warrant affidavit was insufficient.

Robinson was present during the April 4 search of his residence. The search revealed receipts for merchandise in several victims' names, credit reports and receipts that matched information found in the Budgetel hotel room search, computers and stereo equipment, and an instruction manual about remote access to the Credit Bureau in Atlanta.

On April 8, the police obtained a second search warrant for Robinson's residence. During the first search, police officers took serial numbers from various items for which Robinson claimed ownership. Upon further investigation, the police discovered the items were obtained by fraudulent means. Therefore, the police obtained the April 8 search warrant to recover those items. The April 8 search warrant was based entirely upon observations made during the execution of the April 4 search warrant.

At trial, Robinson moved to suppress any evidence gained as a result of the search warrants. Robinson argued the April 4 search warrant affidavit was insufficient on its face to support a finding of probable cause and was not properly supplemented by sworn oral testimony. Robinson further argued any evidence obtained by the April 8 search was "fruit" of the first unlawful search. The trial judge agreed the affidavit was deficient on its face because it failed to include any facts or underlying reasons concerning the informant's veracity. However, the trial judge found the affidavit was properly supplemented by Bartlett's sworn oral testimony concerning probable cause. Thereafter, he denied Robinson's motion to suppress.

## B. Discussion

Robinson argues the trial judge erred in denying his motion to suppress evidence obtained as a result of the April 4

630

search. Specifically, Robinson argues the search warrant affidavit was insufficient on its face to establish probable cause, and the affidavit was not properly supplemented by sworn oral testimony.

A search warrant may issue only upon a finding of probable cause. *State v. Weston*, 329 S.C. 287, 494 S.E.2d 801 (1997). The magistrate's task in determining whether to issue a search warrant is to make a practical, common sense decision concerning whether, under the totality of the circumstances set forth in the affidavit, there is a fair probability that evidence of a crime will be found in the particular place to be searched. *State v. Philpot*, 317 S.C. 458, 454 S.E.2d 905 (Ct.App.1995). This decision includes consideration of the veracity of the person supplying the information and the basis of his or her knowledge. *State v. Johnson*, 302 S.C. 243, 395 S.E.2d 167 (1990); *Philpot*, 317 S.C. at 461, 454 S.E.2d at 907. The affidavit must contain sufficient underlying facts and information upon which the magistrate can make a probable cause determination. *Philpot*, 317 S.C. at 461, 454 S.E.2d at 907. Mere conclusory statements which give the magistrate no basis to make a judgment regarding probable cause are insufficient. *Id.* When a search warrant affidavit is insufficient on its face to establish probable cause, it may be supplemented by sworn oral testimony before the magistrate. *Weston*, 329 S.C. at 290, 494 S.E.2d at 802; *Johnson*, 302 S.C. at 249, 395 S.E.2d at 170; *Philpot*, 317 S.C. at 461, 454 S.E.2d at 907.

In this case, the search warrant affidavit is insufficient on its face to establish probable cause. The affidavit provided the magistrate with no information about Coleman's reliability or veracity. Specifically, the affidavit does not even mention Coleman by name. Applying the totality of the circumstances test, the affidavit did not provide the magistrate with sufficient information to make a probable cause determination. *See Philpot*, 317 S.C. at 461, 454 S.E.2d at 907 (no substantial basis for probable cause existed where magistrate was given no information regarding the reliability of the confidential informant).

However, we conclude the affidavit was properly supplemented by sworn oral testimony. Bartlett testified he first

verbally informed the magistrate about the basis for probable cause to search Robinson's residence. He included in his testimony facts about Coleman's reliability and veracity. He then filled out the warrant and affidavit and submitted the warrant for the magistrate's signature. When he presented the warrant, Bartlett was sworn. He testified the magistrate "ask[ed] that do you swear the *information* is true, and then [Bartlett] sign[ed] the affidavit." (emphasis added). The magistrate swore Bartlett not only to the information contained in the affidavit, but also retroactively to the information first presented in the form of oral testimony.

Our courts have not addressed the proper procedure for administering an oath, so we must look to other jurisdictions for guidance. Although more meticulous in the technical requirements for search warrants, federal courts have upheld warrants where the affiant was not sworn until after presenting supporting or supplemental facts of the case. *See United States v. Turner,* 926 F.2d 883 (9th Cir.1991), *cert. denied,* 502 U.S. 830, 112 S.Ct. 103, 116 L.Ed.2d 73 (1991) (failure to place affiant under oath until after she had recited supporting facts for search warrant did not invalidate telephonic warrant); *United States v. Stefanson,* 648 F.2d 1231 (9th Cir.1981) (telephonic warrant was valid where oath was given after the oral information, rather than immediately before it); *United States v. Johnson,* 641 F.2d 652 (9th Cir.1980) (telephonic warrant was valid where oath was given after oral statements were made and information would have been substantially identical if the oath had been taken prior to the statements).

Furthermore, other jurisdictions have upheld warrants where the affiant was not sworn until after stating facts necessary to supplement the affidavit. *See Ohio v. Wilmoth,* 22 Ohio St.3d 251, 490 N.E.2d 1236 (1986) (Oath was not constitutionally infirm where it was given after officers had testified about probable cause.); *cf. Commonwealth v. Bass,* 24 Mass.App.Ct. 972, 512 N.E.2d 519 (1987) (Search warrant was upheld even though supplemental information contained in unsworn typewritten pages was considered in issuing the warrant.); *Michigan v. Mitchell,* 142 Mich.App. 518, 370 N.W.2d 392 (1985) (Even though the affidavit was unsigned when the search warrant was issued, it may be signed and sworn to *nunc pro tunc.*); *People v. Sullivan,* 56 N.Y.2d 378,

452 N.Y.S.2d 373, 437 N.E.2d 1130 (1982) (As long as there is a method of verification alerting the maker of the statement of the consequences of providing false information, then the affidavit is supported by "oath or affirmation," even if unsworn.); *Loudermilk v. Oklahoma*, 83 Okla.Crim. 374, 177 P.2d 129 (1947) (No particular ceremony is necessary to constitute the act of swearing to an affidavit for a search warrant.).

Moreover, the purpose of the oath requirement is to impress upon the affiant the solemnity of the occasion and the need to tell the truth. *Johnson*, 641 F.2d at 657. Even if Bartlett was sworn after presenting his oral testimony, he still understood the need to provide truthful information to the magistrate and the criminal consequences if he testified falsely. His testimony would have been substantially the same whether he was sworn before or after giving this information to the magistrate.[2]

Robinson argues *State v. York*, 250 S.C. 30, 156 S.E.2d 326 (1967) should control the case before us. We find *York* distinguishable from the present case. In *York*, a sheriff testified he had a "conversation" with the magistrate when the search warrant was issued. *Id.* Our Supreme Court held this was insufficient to establish that the sheriff furnished information under oath or affirmation. *Id.* at 36, 156 S.E.2d at 328. However, contrary to this case, there was no evidence the sheriff had ever been sworn, either before or after his "conversation."[3]

Because we find the first search lawful, evidence found pursuant to the April 8 search warrant was also properly admitted.

---

**2.** Although we find no error under the facts in this case, a better procedure would be for the magistrate to swear the affiant before considering supplemental oral testimony.

**3.** The State also argues that even if the search warrant is invalid, the search warrant should be upheld under the good faith exception to the exclusionary rule. However, the good faith exception is inapplicable in cases where the affidavit fails to provide the magistrate with a substantial basis for probable cause. *Weston*, 329 S.C. at 293, 494 S.E.2d at 804; *Johnson*, 302 S.C. at 248–49, 395 S.E.2d at 170. Therefore, the good faith exception may not be used to validate the warrant.

Accordingly, the trial judge did not err in denying Robinson's motion to suppress evidence obtained as a result of the April 4 and April 8 searches.

## III. CUSTODIAL STATEMENT

### A. Factual Background

During the April 4 search, Bartlett advised Robinson of his *Miranda* rights.[4] That same night, the police transported Robinson to the police station where he was again advised of his *Miranda* rights. Robinson subsequently waived these rights. Bartlett testified Robinson seemed to be well-educated and appeared to understand his rights. Furthermore, he was not coerced or threatened into making a statement. Thereafter, Robinson gave a seven-page written statement.

An arrest warrant was not served on Robinson until April 8. Bartlett testified Robinson's custodial statement and the results of the April 4 search were not the only reasons behind Robinson's subsequent arrest. Bartlett stated he had probable cause to arrest Robinson prior to the execution of the April 4 search warrant. However, Bartlett did not procure an arrest warrant until April 8 because he "wanted to basically get everything, get all the ducks in a row, get everything in order, making sure [he was] absolutely right [in the arrest]." When asked on cross-examination whether he would have placed Robinson under arrest if nothing had been found in the April 4 search, Bartlett responded "[t]hat is an iffy question, obviously. I believe at the time that we could have arrested him; and I think that is probably for the delay and that was probably why we waited to do the—to get the statement from him, to make sure we had everything right."

At trial, Robinson moved to suppress his seven-page custodial statement because it was not given freely and voluntarily. The trial judge denied Robinson's motion to suppress. Robinson also argued the statement was inadmissible because it was obtained as a direct result of the unlawful search. The trial judge denied the motion to suppress on this issue after finding the search was lawful.

---

4. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

## B. Discussion

Robinson argues the trial judge erred in denying his motion to suppress the seven-page custodial statement because it should have been inadmissible as "fruit of the poisonous tree." Robinson contends the police lacked probable cause to arrest him prior to the unlawful search of his residence on April 4, and therefore, his statement was a result of that unlawful search and inadmissible.

Because we hold the April 4 search was lawful, we also find that the custodial statement was not "fruit of the poisonous tree." Therefore, the trial court properly admitted Robinson's custodial statement.

■ Even so, the police still had probable cause to arrest Robinson prior to the April 4 search.

■ When determining the constitutional validity of an arrest, a court must consider "whether, at the moment the arrest was made, the officers had probable cause to make it— whether at that moment the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the [appellant] had committed ... an offense." *Beck v. Ohio*, 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964). Whether probable cause exists depends upon the totality of the circumstances surrounding the information at the officers disposal. *State v. George*, 323 S.C. 496, 476 S.E.2d 903 (1996), *cert. denied*, 520 U.S. 1123, 117 S.Ct. 1261, 137 L.Ed.2d 340 (1997).

As discussed above, co-defendant Coleman gave a series of statements to the police implicating Robinson in the conspiracy. Coleman stated Robinson's part in the scheme consisted of running credit reports on various individuals for use in securing false identifications and credit cards. Although Coleman did not know Robinson's last name, he gave the police a complete description of Robinson and Robinson's wife, led the police to Robinson's home, knew Robinson was employed at C & S Bank, knew Robinson's wife's name and place of employment, and gave details of meetings at Robinson's home. The search of the Budgetel hotel room had already revealed credit reports, and Bartlett had confirmed Robinson was employed

with the Recovery Department at C & S. We conclude, under the totality of the circumstances, the police had probable cause to arrest Robinson prior to the execution of the search warrant.

**AFFIRMED.**

HOWELL, C.J. and GOOLSBY, J., concur.