**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

The State, Respondent,

v.

William Thomas Gule, Jr., Appellant.

Appellate Case No. 2018-001848

Appeal From Charleston County
Doyet A. Early, III, Circuit Court Judge,

Unpublished Opinion No. 2022-UP-106
Heard December 7, 2021 – Filed March 9, 2022

**AFFIRMED**

Dayne C. Phillips, of Price Benowitz LLP, of Columbia,
for Appellant.

Attorney General Alan McCrory Wilson and Senior
Assistant Attorney General J. Anthony Mabry, both of
Columbia, for Respondent.

**PER CURIAM:** William Thomas Gule, Jr. appeals his convictions for the murder of Pamela Burgess and the possession of a weapon during the commission of a violent crime. The trial court sentenced Gule to concurrent sentences of forty

years' imprisonment for murder and five years' imprisonment for the weapon conviction.  We affirm Gule's convictions.

**FACTS/PROCEDURAL HISTORY**

At trial, the jury heard a 911 call made by Gule at 8:20 a.m. on the morning of August 5, 2015.  During the call, Gule calmly stated the following:

> Me and my baby mother got into a disagreement
> about . . .  keeping my son today and we had a little tussle
> and I accidentally ended up shooting [her]
> (unintelligible).  I don't know if she's dead but I panicked
> and just grabbed my son and took off and dropped him
> off with my father and told him I had to be at work
> today  . . . .  I'm right here waiting on an officer to come
> pick me up because I want to turn myself in.

Charleston Police Department (CPD) body camera footage showed officers entering Burgess's residence and finding her body lying in bed under the covers with a pillow over her head.  The footage showed an EMS worker removing the pillow from Burgess's head, revealing blood on the pillow.

Sara Tuuk, the crime scene photographer, testified there were no signs of a struggle in Burgess's apartment.  Tuuk stated Burgess's body was lying on the left side of the bed in the upstairs bedroom and the covers on the right side of the bed were "pretty smooth still."  A television remote was on top of the covers, there were four fired cartridge casings around the bedroom, and blood and pieces of broken eye glasses were on the floor.  Investigators found projectiles on the bed, in the covers, in the pillow under Burgess's head, and in the foam mattress topper.

James Green, a State Law Enforcement Division (SLED) firearms examiner, testified that he test fired the gun obtained from Gule three times.  The gun worked as intended and had a six-and-a-half-pound trigger pull.  Green determined that the four shell casings from the crime scene were fired from the gun.

Thomas Bailey, a CPD detective, testified he checked out the gun from evidence for Dale Hanna, a defense expert witness, to test fire and examine.  Bailey testified he watched as the gun was fired about thirty times and he did not see any misfires or malfunctions.  Bailey stated that defense counsel, a solicitor, the expert witness for the defense, and the CPD firearms range instructor also watched the test fire.

Over Gule's objection, the State called Hanna as a witness, and he stated that he fired the gun thirty-four times with "zero malfunctions."

Burgess's sister, Patricia Pye, also testified over Gule's objection. She testified Burgess and Gule argued "constantly" and their relationship was "very toxic." Pye recalled Gule would constantly belittle Burgess, calling her ugly and fat. Pye stated Gule had not lived with Burgess for over a month before Burgess died and Burgess was "really working on getting him out of the door. She was done." Pye stated she saw "marks on [Burgess's] neck where it looked like somebody had put their hand around . . . . And marks on her arm where somebody had grabbed her." Burgess told Pye she had "gotten into it" with Gule but did not elaborate. About a year before Burgess died, she showed Pye a text message from Gule that stated he was "going to choke her out." Pye stated she overheard a phone call on speaker phone between Burgess and Gule three days before Burgess died. Pye said Gule told Burgess "if he couldn't have her then nobody else could and he would see to it."

Dr. Susan Presnall, a forensic pathologist, performed an autopsy on Burgess. She stated Burgess sustained four gunshot wounds to her head and the bullets would have come from above. Three gunshot wounds were in front of Burgess's left ear, and one gunshot wound was above her left eye. There was a "fair amount" of stippling around the entrance wounds, which indicated close-range gunshots from less than thirty-six inches away. Burgess had eleven bruises on her right arm, seven bruises on the left arm, three bruises on each leg, and four bruises on the right side of her chest area. Burgess did not have stippling or injuries on her hands.

After the State rested, Gule elected not to testify. Before Gule called the first defense witness, the following exchange occurred:

> Solicitor: Your honor, and I want to make sure this is on the record. I have been told by my bosses to bring something up with regard to me calling the defense expert witness yesterday, Mr. Hanna.
>
> The Court: You didn't call him as an expert.
>
> Solicitor: I hear you.
>
> The Court: You called him as a fact witness.

Solicitor: I think there is case law that prevents me from calling expert witness[es] that were retained by the defense without undue hardship . . . . I believe he was a fact witness. I believe it is not applicable. But I do want to make the court aware of it.

. . . .

Defense Counsel: At the time that the witness was called, Dale Hanna, the expert for the defense, we objected. [W]e would make a motion for a mistrial at this time, Your Honor.

The Solicitor noted the State's firearms expert was not available to be called because he was hospitalized with collapsed lungs. The Solicitor argued "[t]his is merely a test firing of the gun . . . it was not opinion evidence, by a witness who was engaged by the defense but didn't testify about anything that wasn't done in everybody's presence." The trial court denied Gule's mistrial motion.

With no supporting argument, Gule requested a jury charge of involuntary manslaughter. The trial court denied the request, stating there was no evidence in the record to support an instruction on involuntary manslaughter. In addition to standard jury instructions, the trial court instructed the jury on the defense of accident. The jury returned verdicts of guilty for murder and possession of a weapon during the commission of a violent crime, and the trial court sentenced Gule to an aggregate term of forty years. This appeal followed.

## ISSUES ON APPEAL

I. Did the trial court err in denying Gule's request to charge the jury on the lesser-included offense of involuntary manslaughter?

II. Did the trial court err in allowing Pye's testimony concerning the prior bad acts of Gule?

III. Did the trial court err in refusing to grant Gule's motion for a mistrial?

## STANDARD OF REVIEW

"In criminal cases, [appellate courts] sit[] to review errors of law only and [are] bound by factual findings of the trial court unless an abuse of discretion is shown." *State v. King*, 422 S.C. 47, 54, 810 S.E.2d 18, 22 (2017) (quoting *State v. Laney*, 367 S.C. 639, 643, 627 S.E.2d 726, 729 (2006)).  "An abuse of discretion occurs when the [trial] court's decision is unsupported by the evidence or controlled by an error of law." *Id.*

## LAW/ANALYSIS

### I.  Involuntary Manslaughter

Gule contends the trial court erred in denying his request for an involuntary manslaughter jury instruction.  Gule did not provide any argument to the trial court in support of his request, and the arguments in Gule's brief were not presented to the trial court.  Therefore, Gule's argument is not preserved for our review.  *See State v. Wigington*, 375 S.C. 25, 36, 649 S.E.2d 185, 190 (Ct. App. 2007) (finding appellant's argument unpreserved because "[c]ounsel never stated any specific reason for his entitlement to the [involuntary manslaughter] charge"); *State v. Stone*, 376 S.C. 32, 35–36, 655 S.E.2d 487, 488–89 (2007) (providing an appellant's argument on appeal was not preserved for review when the appellant did not argue those grounds in support of his argument before the circuit court).

### II.  Prior Bad Acts

Gule argues the trial court erred in admitting Pye's testimony concerning propensity evidence.  Specifically, Gule argues the testimony was not proven by clear and convincing evidence and its probative value was substantially outweighed by the danger of unfair prejudice.  Gule also claims the events in Pye's testimony were too remote.  We disagree.

Pursuant to Rule 404(b), SCRE,

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith.  It may, however, be admissible to show motive, identity, the existence of a common scheme or plan, the absence of mistake or accident, or intent.

"To be admissible, other crimes that are not the subject of conviction must be proved by clear and convincing evidence." *State v. Wilson*, 345 S.C. 1, 5, 545 S.E.2d 827, 829 (2001).

> [Appellate courts] do not review a trial [court]'s ruling on the admissibility of other bad acts by determining *de novo* whether the evidence rises to the level of clear and convincing. If there is any evidence to support the admission of the bad act evidence, the trial [court]'s ruling will not be disturbed on appeal.

*Id.* at 6, 545 S.E.2d at 829.

In addition to establishing the requirements for admissibility under Rule 404(b), the State must show "the probative force of the evidence when used for this legitimate purpose is not substantially outweighed by the danger of unfair prejudice from the inherent tendency of the evidence to show the defendant's propensity to commit similar crimes." *State v. Perry*, 430 S.C. 24, 44, 842 S.E.2d 654, 665 (2020); *see* Rule 403, SCRE (providing a trial court may exclude relevant evidence when the probative value is substantially outweighed by the danger of unfair prejudice). "Unfair prejudice means an undue tendency to suggest [a] decision on an improper basis." *State v. Gilchrist*, 329 S.C. 621, 627, 496 S.E.2d 424, 427 (Ct. App. 1998). As to remoteness,

> [O]ur courts have not established a bright-line rule for determining when evidence loses its probative value due to passage of time. Indubitably, we have established no such rule due to the fact-intensive nature inherent in a Rule 403 analysis. The determination of prejudice depends upon the unique circumstances of each case. Accordingly, the trial [court] is given broad discretion in making the Rule 403 determination.

*State v. Sweat*, 362 S.C. 117, 132, 606 S.E.2d 508, 516 (Ct. App. 2004) (citations omitted).

We note that Gule's threatening text message and threatening statement to Burgess are not analyzed solely under Rule 404 as prior bad acts and are admissible on other grounds. *See Anderson v. State*, 354 S.C. 431, 435, 581 S.E.2d 834, 836 (2003) (holding appellant's threatening statement to victim formed part of the res

gestae of the crime); *State v. Beck*, 342 S.C. 129, 134, 536 S.E.2d 679, 682 (2000) (noting appellant's statement of intent to commit a crime was admissible as a statement or declaration made by one accused of a crime). "As such[,] the bar against admitting prior bad acts is not applicable." *Anderson*, 354 S.C. at 435, 581 S.E.2d at 836. For our purposes, the trial court's relevancy analysis under Rule 403, SCRE, applies to the Pye's statements. Pye's testimony about the bruising that Burgess told her was caused by Gule does fall under the Rule 404(b) analysis.

In any event, we find the trial court did not err in admitting Pye's testimony under Rule 404(b), SCRE. In allowing Pye's testimony, the trial court noted that under Rule 404(b), SCRE, the testimony was admissible to counter Gule's position that the shooting was an accident. The trial court stated that under Rule 403, SCRE, the testimony was more probative than prejudicial because "the case was being defended on the legal theory of accident or mistake." Pye's testimony was admissible under Rule 404(b) to show the absence of mistake or accident. Under Rule 403, the testimony was relevant and it was more probative than prejudicial to show that Gule threatened Burgess's life. *See Blakely v. State*, 360 S.C. 636, 639, 602 S.E.2d 758, 759 (2004) ("It is well-settled that evidence of previous threats by the defendant is admissible to show malice."). Pye's testimony that Burgess told her Gule caused the bruising that Pye observed rises to the level of clear and convincing evidence. *See Wilson*, 345 S.C. at 6, 545 S.E.2d at 829 ("If there is any evidence to support the admission of the bad act evidence, the trial [courts]'s ruling will not be disturbed on appeal.") Further, as the trial court found, the testimony about the text message concerning Gule "choking" Burgess was not too remote because it showed a pattern during their four-to-five-year relationship. *See State v. Brooks*, 341 S.C. 57, 61, 533 S.E.2d 325, 327 (2000) (stating there must be a logical relevance between the prior bad act and the crime for which the defendant is accused). Accordingly, we affirm the trial court on this issue.

## III.  Mistrial Motion

Gule contends he was denied his Sixth Amendment right to effective assistance of counsel by the trial court's denial of his motion for a mistrial. However, Gule did not request a curative instruction for Hanna's testimony, and he did not make a motion for mistrial contemporaneously with Hanna's testimony. Gule moved for a mistrial after several other witnesses testified, the State rested its case, and the trial court denied Gule's motion for a directed verdict. Thus, Gule's motion was not timely and this issue is not preserved for our review. *See State v. Heller*, 399 S.C. 157, 174, 731 S.E.2d 312, 321 (Ct. App. 2012) (concluding a motion for a mistrial was not preserved for appellate review when the court sustained an objection and

gave a curative instruction and appellant did not contemporaneously move for a mistrial but waited until after the State completed examination of the witness and the court took a fifteen-minute recess); *State v. Smith*, 307 S.C. 376, 392–93, 415 S.E.2d 409, 418–19 (Ct. App. 1992) (finding appellant's motion for mistrial was not timely raised when it did not accompany appellant's objection to witness' testimony and was made at the end of the state's case).

Accordingly, Gule's convictions are

**AFFIRMED.**

**WILLIAMS, C.J., MCDONALD, J., and LOCKEMY, A.J., concur.**